Francis T. Murphy, Jr., J.
Motions numbered 36, 75, 80, 97 and 152 of the calendar of May 17, 1966 are consolidated herein and disposed of together.
Petitioner Margaret Iaquinta has instituted this proceeding, pursuant to article 78 of the CPLR, for an order directing the respondents New York City Employees’ Retirement System and the Board of Estimate of the City of New York to pay the retirement allowance allegedly due her as the beneficiary of Nicholas Iaquinta, a New York City employee, who died while in service of the city after having become eligible for retirement. Petitioner also seeks an order dismissing the cross petition of respondent Rose Iaquinta on the ground that it fails to state facts sufficient to entitle said respondent to the relief sought in the cross petition, to wit, a direction that respondents pay Rose Iaquinta the amount in question. Additionally, petitioner charges that Rose Iaquinta was granted leave solely to intervene herein without the right to serve a cross petition.
By a prior order of this court, entered March 29, 1966 ( G-old, J.), Rose Iaquinta was permitted to intervene in this complex action because she ‘ ‘ may well be adversely affected by any judgment rendered in this matter, ’ ’ and inasmuch as ‘ ‘ common questions of law ’ ’ are involved. The order of this court directed that Rose Iaquinta “ be added as a party respondent ” and that the petition be amended accordingly. No limitation was placed upon her rights to proceed in this action. Under the circumstances, Rose Iaquinta may properly participate in the instant litigation by the service of a cross petition.
Essentially, both Rose and Margaret Iaquinta seek judgments directing the respondent New York City Employees’ Retirement System to pay to each certain money benefits due as a result of the death of Nicholas M. Iaquinta.
A review of the statutes in question is warranted. Prior to 1963, employees who were members of the retirement system had specified amounts deducted from their salary checks. That sum, in addition to an amount not in excess of one year’s salary, was denominated “ ordinary death benefits,” and was payable to the designated beneficiary of the employee upon the death of said employee (Administrative Code, § B3-32.0). “ Ordinary death benefits ’ ’ are distinguished from the 'pension ’ ’, or “retirement allowance”. The latter consists not only of the accumulated deductions and salary figure which determine ‘ ‘ ordinary death benefits,” but also includes contributions made by the city in conjunction with the accumulated salary deductions. But until actual eligibility for retirement, city contributions could not be collected. More importantly, before 1963, actual *494 retirement was a prerequisite to the collection of the city contributions. The “death gamble benefits ” statutes remedied a seemingly unfair situation whereby an employee who reached the eligible retirement age, but continued on the job, and died while so employed, lost his right to have any amount other than “ ordinary death benefits ” paid to his beneficiary. In short, before 1963, if one continued working at his job beyond his eligible retirement date, and died before actually retiring, his beneficiary received only those benefits payable pursuant to section B3-32.0.
In 1963, chapter 1021 of the Laws of 1963 added section B3-56.0 to the Administrative Code of the City of New York. That section provided “ death gamble benefits ” for Justices and Judges and officers and employees of the Supreme and Surrogate’s Courts who were members of the New York City Employees’ Retirement System. The thrust of that law was to permit an employee, upon becoming eligible to retire, to file a presumed retirement beneficiary form that allowed him to continue in service, and upon his death (prior to actual retirement), he was presumed to have retired one day before his death. The result was to have employees continue in city service after eligibility for retirement without the fear that the pension allowance would be forfeited. The next year, chapter 968 of the Laws of 1964 extended these benefits to Judges, officers and employees of the Civil, Criminal and Family Courts of the City of New York. The provisions of the 1963 act were continued in toto, save-for the addition of the afore-mentioned court personnel. On July 16, 1965, chapter 860 of the Laws of 1965 was enacted and approved effective as of that date. That statute extended the “ death gamble benefits ” to all members of the New York City Employees’ Retirement System.
Pursuant to the Laws of 1963 and 1964, court employees who were members of the retirement system could designate beneficiaries to receive the retirement allowance due if death occurred prior to actual retirement, but after a member became eligible to retire. Under those statutes, the failure to designate a specific beneficiary and/or one of four options available resulted in the benefits being paid to any beneficiary designated to receive ordinary death benefits under section B3-32.0 of the Administrative Code.
A radical change is found under the 1965 act. Thus, within the Laws of 1965, unless a presumed option selection was filed nominating a particular beneficiary for “ death gamble benefits ”, pursuant to section B3-46.0 of the Administrative Code, the option benefits are payable to the legal representative of the *495 estate of the deceased employee, rather than the beneficiary named to receive ordinary death benefits.
In view of the multiple motions submitted hereon, and for the sake of clarity, some factual background must be recited. The deceased married Rose Iaquinta in 1933, and there were three issue of said intermarriage. In 1939, while employed by the City of New York, Nicholas applied for membership in the New York City Employees’ Retirement System. At that time, he nominated his then wife, Rose, as beneficiary to receive the ordinary death benefit and accumulated salary deductions due in the event that he died prior to the date of his retirement, and while in city service. The designation was made pursuant to section B3-32.0 of the Administrative Code. Later, the decedent named his three children in place of his wife.
Some time in the latter part of 1964, or early in 1965, Nicholas left for the Republic of Mexico and obtained an ex parte divorce decree from his wife. On June 14, 1965, Nicholas and Margaret were allegedly married without the State of New York. Shortly thereafter, on June 21, 1965, the decedent named Margaret as the beneficiary of the same benefits for which Nicholas had previously named Rose and then the three children. On July 16,1965, chapter 860 was approved and became effective on that date. On September 7,1965, while serving as a court officer and eligible for retirement, Nicholas died intestate in Queens County. The decedent never did file a presumed option selection nominating a particular beneficiary to receive death gamble — presumed retirement benefits.
One week after death, Margaret filed a claim for death benefits. Payment was refused on the ground that the benefits would be paid only to the legal representative of the estate.
Subsequently, on February 3, 1966, Rose Iaquinta filed a petition in the Surrogate’s Court, Queens County, as surviving spouse, for letters of administration of the goods, chattels and credits of Nicholas. The petition alleged that the ex parte Mexican divorce obtained by Nicholas was invalid, as of course, was the 1 ‘ marriage ’ ’ by the decedent to the petitioner. Margaret opposed the petition, and sought to have letters issued to her as the lawful surviving spouse.
In a decision dated May 16, 1966, the Surrogate’s Court, Queens County (Clancy, J.), held that the “ decedent’s Mexican divorce was invalid and it follows that his subsequent marriage to [Margaret] was likewise invalid.” The court thus granted letters of administration to Rose Iaquinta.
When Nicholas Iaquinta died in September, 1965, after having become eligible to retire, he had failed to file a presumed option *496 selection nominating a particular beneficiary for the “ death gamble benefits.” That failure, it is argued, effectively insures that retirement benefits are properly payable to the legal representative of the decedent’s estate under the Laws of 1965. On the other hand, Margaret argues that since Nicholas did not file a presumed option selection, the death gamble benefits payable under the provisions of chapter 968 of the Laws of 1964 (Administrative Code, § B3-56.0) became payable to her as the beneficiary nominated under the ordinary death benefits provision of section B3-32.0.
One other notable factor must be mentioned. The Corporation Counsel submits that he has advised the New York City Employees ’ Retirement System that ‘ ‘ where an option beneficiary for presumed retirement is not designated, payment of retirement allowance should be paid to the legal representative of the estate of the deceased employee ” (Memorandum of Law, Corporation Counsel, p. 4).
Chapter 860 of the Laws of 1965, in issue hereon, was sponsored by the City of New York. The memorandum in support of the legislation, annexed to the papers presented to the court, specifically sets forth that the object of the bill was to provide ‘ death gamble benefits ’ ’ to all members of the retirement system, with one exception not in issue here. The decedent concededly failed to designate a beneficiary of death gamble benefits pursuant to section B3^46.0 of the Administrative Code. The retirement system has ruled that in order to insure payment to the desired beneficiary, those eligible for retirement were required to file an application for presumed retirement. The ruling by the retirement system, as the administering agency, in interpreting chapter 860 of the Laws of 1965, is entitled to great weight (see Fleming v. New York City Employees’ Retirement System, N. Y. L. J., Dec. 19, 1962, p. 9, col. 7; Matter of Going v. Kennedy, 5 A D 2d 173, 175, affd. 5 N Y 2d 900).
Because the deceased failed to file an application for presumed retirement nominating a particular beneficiary under section B3-46.0, the benefits are payable to the legal representative, namely, Rose Iaquinta. They may not be paid to the petitioner under section B3-32.0. Chapter 860 of the Laws of 1965 is clear and unambiguous. The retirement benefits granted in previous years remained the same, as did the right to designate a beneficiary. The change effected by the 1965 statute was a Legislature direction to have the benefits paid to the estate of the employee where a designation was not made. The unequivocal language of the statute makes it abundantly clear that the Laws *497 of 1965 control with respect to the payment of a retirement allowance where an option beneficiary has not been designated.
Petitioner’s position that chapter 860 of the Laws of 1965 did not supersede the previous legislation, is without merit. An examination of the three statutes in question reveals a plethora of similarities pertaining to the presumption of retirement by members of the retirement system. The different acts are applicable to the same subjects, and the latest one supersedes the previous law. The 1964 and 1965 statutes cannot stand together, and petitioner’s contentions with relation thereto are untenable.
Petitioner argues that notwithstanding the effectiveness of chapter 860, by which petitioner is deprived of the retirement allowance she is entitled to the amount of money represented by the ordinary death benefits under section B3-32.0. The petitioner’s position is not persuasive.
Section B3-32.0 allows for payment to a designated beneficiary of ordinary death benefits, consisting of the decedent’s accumulated deductions plus a sum not in excess of one year’s salary. On the other hand, payments due under the “ death gamble benefits ” are the accumulated deductions plus the accumulated contributions made by the city. Thus, two distinct funds are involved, and two different persons may be designated to receive the separate benefits.
In a case analogous to the one at bar (Smits v. Teachers’ Retirement System, 48 Misc 2d 911) a city employee, eligible to retire, failed to designate a beneficiary to receive death gamble benefits, although the petitioner therein was designated to receive the ordinary death benefits. Upon the employee’s death, the petitioner sought to have payments made to her in her individual rather than in her representative capacity. The outstanding statute provided for payment to the legal representative if no beneficiary was designated to receive death gamble benefits. The court held that the decedent’s failure to make a designation, or indicate an election of options, resulted in the payment of retirement benefits to the legal representative of the estate.
The other arguments advanced on behalf of the petitioner have been considered, and been found to be without merit.
Under the circumstances, the motions are disposed of as follows: Petitioner’s application for an order directing the respondents to pay the benefits in issue to her is denied. Petitioner’s application for an order dismissing the cross petition of Rose Iaquinta is denied, and the relief requested in said cross petition is granted. In view of the foregoing dispositions, the other motions presented hereon are denied as academic.